```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/30/2024_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HILLDUN CORPORATION, | |
| Plaintiff, | 23-CV-3178 (AS) (BCM) |
| -against- | **REPORT AND RECOMMENDATION TO THE HON. ARUN SUBRAMANIAN** |
| N:PHILANTHROPY LLC, YVONNE NIAMI, and HOLDING COMPANY OF BEVERLY HILLS, LLC, | |
| Defendants. | |

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Hilldun Corporation (Hilldun) brought this breach of contract action to recover approximately $3 million that it loaned to defendant N:Philanthropy LLC (NPL) under a factoring agreement. Plaintiff also sued Yvonne Niami (Niami) and Holding Company of Beverly Hills, LLC (HCBH), NPL's guarantors. After all three defendants (collectively, the Defaulted Defendants) failed to appear in this action, the Hon. Arun Subramanian, United States District Judge, granted plaintiff's motion for a default judgment, directed the entry of a final judgment against the Defaulted Defendants in the amount of $3,402,035.37 and found that plaintiff was also entitled to "costs and attorneys' fees under the parties' agreement[.]" Default J. Order (Dkt. 32) at 2. Judge Subramanian then referred the action to me to conduct an inquest "to address those costs and fees." *Id.*; *see also* Dkt. 33. For the reasons that follow, I recommend that plaintiff be awarded $176,703.50 in attorneys' fees and $402 in costs, for a total of $177,105.50.

I.  BACKGROUND

   A.  Factual Allegations

After default, the Court accepts as true all well-pleaded factual allegations contained in the plaintiff's complaint, except as to damages. *City of New York v. Mickalis Pawn Shop, LLC*, 645

F.3d 114, 137 (2d Cir. 2011); *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Consequently, the following facts are deemed established:

      Hilldun entered into a discount factoring agreement with NLP (the NPL Agreement) (Dkt. 1-1) on or about April 13, 2017. Compl. (Dkt. 1) ¶ 1, ¶ 10. The NPL Agreement stipulated that Hilldun would lend funds to NPL, which NPL would repay, with interest, in the ordinary cost of its business. *Id*. Defendant Niami executed the agreement on behalf of defendant NPL. *Id*. ¶ 10. On the same day, Niami, signed a guaranty (the Niami Guaranty) (Dkt. 1-2), in which she promised to pay all debts owed by NPL to Hilldun under the NPL Agreement. *Id*. ¶ 11. On February 11, 2020, Niami executed a Rider (Rider) (Dkt. 1-3), on behalf of NPL and HBCH, which stipulated that Hilldun would lend additional funds based on NPL and HCBH's ability to pay. *Id*. ¶ 12. On the same day, Niami executed another guaranty on behalf of HCBH (the HCBH Guaranty) (Dkt. 1-4), which promised to pay all debts owed by NPL to Hilldun that had or would become due under the NPL Agreement. *Id*. ¶ 13.

      On March 21, 2023, Hilldun advised defendants that the total amount due and owing under the NPL Agreement and the Rider, as of March 19, 2023, was $3,053,720.39; declared defendants in default; and terminated the financing and credit facilities previously made available to NPL. Compl. ¶ 25 & Ex. 5 (Dkt.1-5).

      **B.**    **Procedural History**

      Plaintiff filed this action on April 17, 2023, alleging that defendants breached the terms of the NPL Agreement, the Rider, and the Guaranties, and that it was entitled to recover the entire amount due as damages for the breaches, Compl. ¶¶ 28-35, 59-66, 72-79, or – in the alternative – on theories of account stated, money due and owing, and/or unjust enrichment. *Id.* ¶¶ 50-58. On July 7, the Defaulted Defendants were served with process. (Dkts. 13-15.) On August 23, plaintiff

requested, and the Clerk of the Court issued, a Certificate of Default as to each defendant. (Dkts. 17-18.) That same day, plaintiff moved for entry of a default judgment. (Dkt. 19.) Judge Subramanian granted that motion on September 22, 2023, and awarded plaintiffs damages in the amount of $3,402,035.37 ($3,053,720.39 plus prejudgment interest). *See* Default J. Order at 2-3.[1]

Judge Subramanian held that "Plaintiff is also entitled to costs and attorneys' fees under the parties' agreement," Default J. Order at 3 (citing NPL Ag. § 10), but that "an inquest is required to address these costs and fees." *Id*. Consequently, Judge Subramanian referred the case to me to conduct a damages inquest.

On September 25, 2023, I issued a Scheduling Order for Damages Inquest directing plaintiff to submit proposed findings of fact and conclusions of law, supported by admissible evidence of the fees incurred, including properly authenticated contemporaneous time records, see Sched. Order (Dkt. 34) ¶ 2, and to serve its inquest materials upon the Defaulted Defendants, by mail, at their last known addresses. *Id*. ¶ 4.

On October 16, 2023, plaintiff timely submitted its Proposed Findings (Prop. Findings) (Dkt. 37), supported by the declarations of Jerrold L. Bregman (Bregman Decl.) (Dkt. 38) and Robert E. Malchman (Malchman Decl.) (Dkt. 39). Plaintiff served the Proposed Findings and supporting declarations – along with the Default Judgment Order and the Scheduling Order – on the Defaulted Defendants, by mail, at the address of "a law firm that represented some or all of the Defendants and [which] contacted Niami directly regarding the papers served earlier in this action," and on Niami at her NPL email address. (Dkt. 4 ¶¶ 4-5.) The Defaulted Defendants did not submit any opposition to the Proposed Findings.

---

[1] Although Judge Subramanian directed that "final judgment be entered against Defendants in the amount of $3,402,035.37," Default J. Order at 3, it does not appear that any judgment has been formally entered.

3

## II.   LEGAL STANDARDS

Under New York law, which governs the relevant contracts (*see* NPL Ag. ¶ 16(a); Niami Guaranty at 2; Rider at 1; HCBH Guaranty at 2), a prevailing party may recover its costs and attorneys' fees, in addition to damages, where such an award is "authorized by agreement between the parties." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). However, "an award of attorneys' fees pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered." *Exec. Risk Indemn., Inc. v. Fieldbridge Assocs. LLC*, 642 F. App'x 25, 25 (2d Cir. 2016) (summary order) (cleaned up); *see also CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013) ("[T]he touchstone for an award of attorneys' fees pursuant to a contract is reasonableness."); *Proimmune Co., LLC v. Holista Colltech Ltd.*, 2024 WL 54281, at *1 (S.D.N.Y. Jan. 4, 2024) (where the contract "unmistakabl[y]" entitles plaintiff to a fee award, the court must still "examine whether Plaintiff's request is reasonable").

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This calculation yields a "presumptively reasonable fee," commonly referred to as the "lodestar." *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill*, 522 F.3d at 183. Although developed for use in civil rights actions, "the same principle has been applied to awards of contractual attorney's fees." *Byline Bank v. SDS Dining Corp.*, 2024 WL 1422812, at *5 (S.D.N.Y. Apr. 3, 2024) (collecting cases). Within this broad mandate, the district court has "considerable discretion" in determining the amount of the award. *Arbor Hill*, 522 F.3d at 190.

## III.   APPLICATION

The NPL Agreement provides, in relevant part, that NPL "will pay to Hilldun . . . all costs and expenses, including, without limitations, the fees and disbursements of counsel," incurred by Hilldun:

> at any time in perfecting, protecting, enforcing or administering Hilldun's . . . rights hereunder or in any collateral in which Hilldun . . . ha[s] a security interest or in the defense of prosecution of any action or proceeding concerning any matter growing out of or in connection with this Agreement and/or any security interest herein granted hereunder.

NPL Ag. § 10. Similarly, in in the Guaranties, both Niami and HCBH broadly promised to pay "all costs and expenses, including, without limitation, the fees and disbursements of counsel, which [plaintiff] may incur at any time in enforcing or administering [its] rights hereunder or in the defense [or] prosecution of any action or proceeding concerning any matter growing out of or in connection with this Guaranty or the above-referenced [NPL Agreement]." Niami Guaranty at 2; HCBH Guaranty at 2.

These provisions entitle plaintiff to recover its costs and attorneys' fees reasonably expended not only in this Court – in the instant lawsuit – but also in other jurisdictions, to enforce or administer Hilldun's rights under the NPL Agreement and the Guaranties or in the underlying collateral. *See Byline Bank*, 2024 WL 1422812, at *6 (S.D.N.Y. Apr. 3, 2024) (noting that legal work previously performed in defendant's bankruptcy case was "recoverable given the language in the contract that permits recovery for collection costs"); *BankUnited, N.A. v. Blue Wolf Invs., LLC*, 2019 WL 3416084, at *9 (S.D.N.Y. July 1, 2019) (in suit on guaranty, "the attorneys' fees incurred as part of the collection activity prior to the commencement of the instant litigation and as part of the bankruptcy matters are reimbursable"), *adopted,* 2019 WL 3409398 (S.D.N.Y. July 26, 2019).

5

Plaintiff now seeks a total of $250,054.49 for attorneys' fees and costs, for legal services provided and costs incurred by BG Law LLP (BG Law) and Allegaert Berger & Vogel LLP (ABV). Prop. Findings at 4.

## A.     Reasonable Hourly Rates

Ordinarily, where fees are sought for work performed on the same case in which the fee motion is made, the court will assess the reasonableness of the proposed hourly rates by considering "prevailing rates" for similar work, by competent practitioners, in that district. *Polk v. New York State Department of Correctional* Services, 722 F.2d 23, 25 (2d Cir. 1983). However, "the district court may adjust this base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel, just as it may adjust the base hourly rate to account for other case-specific variables." *Arbor Hill*, 522 F.3d at 183-84 (affirming fee award limiting plaintiff's recovery to hourly rates prevailing in the Northern District of New York, notwithstanding that plaintiff retained counsel based in New York City and Washington, D.C.). By the same token, when fees are sought for work performed in other jurisdictions, the court presiding over the fee application should consider prevailing rates in those jurisdictions. *See generally C.B. v. New York City Dep't of Educ.*, 2019 WL 3162177, at *4 (S.D.N.Y. July 2, 2019) ("When the matter was not commenced and litigated within a single district, the court can exercise its discretion when choosing the relevant community.").

"[T]he fee applicant 'bears the burden of produc[ing] satisfactory evidence that its requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *2 (S.D.N.Y. Apr. 20, 2021) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015)) (internal quotation

marks omitted); *accord Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, 2024 WL 3409278, at *4 (S.D.N.Y. July 15, 2024) ("The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable, and must provide a court with sufficient information to assess the fee application.").

The hourly rate actually charged by a lawyer and actually paid by his or her client is "strong evidence of what the market will bear." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate"). However, "the Court retains some responsibility to disciplin[e] the market if necessary," *Charlestown Cap. Advisors*, 2021 WL 1549916, at *2 (quoting *Danaher Corp. v. Travelers Indem. Co.*, 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014)) (internal quotation marks omitted), by "stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184.

Because of the inherent delay in obtaining a fee award, courts should use "current rather than historic hourly rates," if they can reliably be determined, to calculate a fee award. *Reiter v. Metropolitan Transportation Authority of New York*, 457 F.3d 224, 232 (2d. Cir. 2006) (quoting *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998)).

    1.    **ABV**

ABV, which is a small (23-lawyer) firm with a single office in New York City,[2] served as lead litigation counsel for plaintiff in this Court. Plaintiff seeks fees for one ABV attorney – Robert E. Malchman – and three paralegals. Malchman Decl. ¶¶ 1-5. Malchman graduated from law school in 1989, clerked for a federal judge, and thereafter worked as a litigation associate at a large

---

[2] *See* https://abv.com/about/ (last visited Oct. 30, 2024).

New York law firm, as general counsel to a hedge fund management firm during its restructuring and liquidation, and as both a full-time and an adjunct faculty member at various law schools. *Id*. ¶ 4. He has been "of counsel" to ABV since 2009. *Id*. The three paralegals who worked on this action (Katherine S. Filosa, Eleanor Morgan, and Jonah Sachs) were all recent college graduates with no specialized training or relevant experience. *Id*. ¶ 5. ABV billed $630 per hour for attorney Malchman's time spent on this matter, and $175 per hour for the time of its paralegals. *Id*. ¶ 3 & Ex.1 (ABV billing records). As of October 12, 2023 (the date of Malchman's declaration), plaintiff had paid ABV in full for its services through October 11, 2023. *Id*.

Given attorney Malchman's experience and seniority, as well as the professionalism with which he conducted this matter, his requested rate appears reasonable. *See, e.g.*, *Zero Carbon Holdings*, 2024 WL 3409278, at *6 (awarding $600 per hour for partners and $500 for counsel in a commercial litigation); *Top Jet Enterprises, Ltd. v. Kuloweic*, 2022 WL 1184245, at *3 (S.D.N.Y. April 21, 2022) (awarding $825 per hour for partners and $655 per hour for counsels who prevailed on post-judgment discovery motion in complex commercial case); *Drip Cap., Inc. v. M/S. Goodwill Apparels*, 2024 WL 1116166, at *2 (S.D.N.Y. Mar. 12, 2024) (awarding $765 per hour for small-firm partner who obtained judgment confirming arbitration award for breach of factoring agreement); *Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, 2020 WL 9762874, at *7 (S.D.N.Y. May 29, 2020) (noting that courts in this district "have found partner rates in the range of $375 to $650 to be reasonable" in straightforward breach of contract actions).

However, plaintiff's request for $175 per hour for the ABV paralegals is excessive in light of their inexperience and lack of any specialized training. *See Zero Carbon Holdings*, 2024 WL 3409278, at *8 (reducing requested paralegal rates to $115 per hour in the absence of evidence suggesting any special expertise); *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2022

WL 413229, at *15 (S.D.N.Y. Feb. 9, 2022) (reducing requested rates for legal support staff to $150 per hour in the absence of information suggesting that they had "particular skill, training or experience that might justify" the higher rates requested); *Smart Team Glob. LLC v. Humbletech LLC*, 2022 WL 1785389, at *3 (S.D.N.Y. June 1, 2022) (Nathan, J.) (reducing requested rates for paralegals to $100 where plaintiff provided "no evidence" to justify the higher rates requested). I therefore recommend that the ABV paralegals be assigned a rate of $125 per hour for purposes of the instant fee application.

      2.    **BG Law**

Plaintiff seeks fees for thirteen legal professionals at BG Law, which is a small (16-lawyer) firm with offices in Los Angeles, Las Vegas, and Denver.[3] BG Law served as co-counsel for plaintiff in this action and also represented Hilldun in connection with the enforcement of its rights under the relevant contracts prior to the filing of this action. *See* Bregman Decl. ¶ 5 (BG Law provided services "arising from and related to protecting, enforcing, and administering Hilldun's rights in collateral received as security in connection with Defendants' agreements"). Bregman, who is a partner in the firm, and Ryan F. Coy, an associate, worked on the instant lawsuit (coded internally as matter 3944.009.03), along with paralegal Juanita Treshinsky. *See* Bregman Decl. ¶ 5(c); *id*. Ex. 1 (BG Law billing records) at ECF pp. 11-17 (billing for matter 3944.009.03). In addition, Bregman, McCoy, Treshinsky, and ten additional BG Law timekeepers – managing partner Steven G. Gubner, four other partners, two of counsel, one other associate, and two additional paralegals – worked on various Hilldun engagements outside of this district, including providing services "in the chapter 11 bankruptcy of one of the title owners of collateral securing the Defendants' obligations, through which the collateral was sold," defending Hilldun when it was

---

[3] *See* https://www.bg.law/about (last visited Oct. 30, 2024).

"sued by other creditors who challenged Hilldun's security interest in the collateral," "collecting proceeds from Defendants' sale of collateral in Los Angeles," and representing Hilldun in "related litigation," also in Los Angeles, following defendants' breach of an agreement regarding the terms under which they could "roll certain proceeds of that sale into other collateral." *Id*. ¶ 5(a)-(c).

The hourly rates billed for all thirteen BG Law timekeepers are as follows:

| *Timekeeper* | *Position* | *Hourly Rate Billed* |
|---|---|---|
| Steven G. Gubner | Mg. Partner | $ 895[4] |
| Mark Brutzkus | Partner | 725 |
| Jerrold L. Bregman | Partner | 675-725 |
| Nicholas Rozansky | Partner | 645-675 |
| Jessica Bagdanov | Partner | 625 |
| Michael P. Weisberg | Partner | 575 |
| Racey Cohn | Of Counsel | 495-550 |
| Ronald Abrams | Of Counsel | 550 |
| Ryan F. Coy | Associate | 395-435 |
| Jessica Wellington | Associate | 395 |
| Yves Pierre Derac | Paralegal | 280 |
| Juanita Treshinsky | Paralegal | 270-325 |
| Susan Robbins | Paralegal | 260 |

As of October 16, 2023 (the date of Bregman's declaration) Hilldun had paid BG Law's invoices through August 31, 2023. *Id*. ¶ 3 & Ex. 1 at ECF p. 6.

Bregman, Gubner, and Coy collectively account for almost 85% of the 341.9 hours that all BG Law timekeepers spent on all relevant Hilldun matters. *See* Bregman Decl. Ex. 1, at ECF p. 64. Bregman graduated from law school in 1990 and is an experienced "financial restructuring lawyer and business advisor." Bregman Decl. Ex. 2 (firm biographies) at ECF p. 3. He was named a Specialist in Bankruptcy Law by the California Board of Legal Specialization, and is listed as a

---

[4] Bregman states that Gubner's billing rate was $995 per hour. Bregman Decl. ¶ 6. However, the attached billing records do not reflect that Gubner's rate was ever raised above $895 per hour. *See id*. Ex. 1, at ECF p. 67. In determining whether BG Law's rates were reasonable, I have begun by considering the most current hourly rate listed for each timekeeper in the firm's billing records.

New York "Super Lawyer." *Id*. Gubner graduated from law school in 1991 and focuses on "complex bankruptcy and insolvency matters." *Id*. at ECF p. 2. He is "particularly skilled in commercial collections for banks and financial institutions[.]" *Id*. Coy graduated from law school in 2018, clerked for two federal bankruptcy judges before joining BG Law, and was listed as a "Rising Star" in bankruptcy litigation by Thomson Reuters in 2023. *Id*. at ECF p. 4. The remaining BG Law attorneys have comparable credentials. *Id*. at ECF pp. 2-6. Moreover, BG Law's paralegals all have paralegal certificates (in addition to their college degrees) and extensive experience in relevant areas of the law. *Id*. at ECF pp. 4, 6.

BG Law's hourly rates, although on the high side, are not unreasonable for well-credentialed small-firm attorneys and paralegals working on commercial litigation matters in this district. *See, e.g.*, *Proimmune Company,* 2024 WL 54281, at *2-3 (finding an hourly rate of $895, charged by a partner in a small California-based firm, to be "on the higher end" but "well within the reasonable range for commercial litigation cases generally," and approving an hourly rate of $395 for an associate in the same case); *Reisman v. Northeaster Power and Gas LLC*, 2024 WL 1076894, at *9 (S.D.N.Y. Mar. 12, 2024) (finding hourly rates of $420-475 for an associate and $290 for paralegals reasonable); *Top Jet Enterprises*, 2022 WL 1184245, at *3 (awarding $825 per hour for partners and $655 per hour for counsels); *Nautilus Neurosciences, Inc. v. Fares*, 2014 WL 1492481, at *2 (April 16, 2014) (finding hourly rates of $670 for a partner and $375 for an associate reasonable in a case involving non-payment of a promissory note in 2014).

However, hourly rates appear to be lower in California, where most (if not all) of the firm's work on other aspects of the Hilldun engagement took place. *See OWLink Tech., Inc. v. Cypress Tech. Co.*, 2023 WL 9061081, at *2 (C.D. Cal. Dec. 12, 2023) (hourly rates requested by attorneys employed by large New York firm "should be adjusted slightly downward to bring them closer to

11

the market rate in the District"); *see also, e.g.*, *Balboa Capital Corp. v. JAAM Transport LLC*, 2024 WL 3466476, at *3 (C.D. Cal. June 3, 2024) (in breach of guaranty case, awarding fees at the hourly rate of $495 for the lead partner and $395 for the senior associate); *Schonbrun v. SNAP, Inc.*, 2022 WL 2903127, at *3-4 (C.D. Cal. May 17, 2022) (in breach of commercial contract case, awarding fees at the hourly rate of $695 for the lead partner, $550 for the senior associate, and $295 for the paralegals); *In re Trinh*, 2022 WL 898758, at *8 (Bankr. C.D. Cal. Mar. 28, 2022) ($650 per hour was reasonable for principal of small firm serving as special litigation counsel in bankruptcy case), *amended*, 2022 WL 910258 (Bankr. C.D. Cal. Mar. 28, 2022).

BG Law has not pointed the Court to any cases finding its requested hourly rates to be reasonable in the jurisdictions where it provided the services described in paragraph 5 of the Bregman Declaration. Nor has it produced any "satisfactory evidence" that the rates it requests "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Charlestown Cap. Advisors*, 2021 WL 1549916, at *2.[5] Moreover, although a court may draw on its "own familiarity with the rates prevailing in the district" in which it sits, *Farbotko v. Clinton County of New York,* 433 F.3d 204, 209 (2d Cir. 2005), this Court has no such familiarity with the rates prevailing in California. Consequently, I recommend that, for work performed outside of this district, the hourly rates of the BG Law partners be capped at $700 for purposes of the instant fee application.

---

[5] Bregman's conclusory statement that based on his experience "the fees and costs incurred are reasonable and should be awarded to Hilldun," Bregman Decl. ¶ 9, has little evidentiary weight. *See Charlestown Cap. Advisors*, 2021 WL 1549916, at *3 (" Nor can I accept the APKS attorneys' conclusory assertion that their stated rates are 'in line' with the hourly rate for attorneys at their seniority levels 'at other comparable law firms in New York City.'").

12

### B. Reasonable Hours Billed

To determine reasonable hours, the court "must examine the hours expended and the value of the work product," *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d. Cir. 1998), and should exclude "excessive, redundant, or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d. Cir. 1999).

#### 1. ABV

Together, the ABV timekeepers spent 64.6 hours, from March 2023 to October 2023, on the instant lawsuit. *See* Malchman Decl. Ex. 1 (Dkt. 39-1) (ABV billing records). Malchman spent 48.1 hours communicating with BG Law and drafting litigation documents (including the fee application now before the Court). *Id.* at 8-30. The three paralegals billed 16.5 hours for organizing various documents. *Id.* at 13. The time spent on this matter is supported by ABV's contemporaneous billing records, which describe tasks that appear to have been reasonably necessary for the litigation of plaintiff's claims in this forum. Further, although defendants never appeared, such that plaintiff was able to obtain an uncontested default judgment, the total time expended – 64.6 hours – does not appear excessive in light of the complexity of the underlying course of conduct, the amount at stake, and ABV's learning curve (as new counsel retained for the New York litigation). *See Mintable Pte. Ltd. v. Mintology Inc.,* 2024 WL 4493770, at *6 (S.D.N.Y. Oct. 15, 2024) (awarding fees based on 121.8 hours reasonably spent obtaining default judgment in Lanham Act case); *Doe v. Gonzalez*, 2024 WL 2795216, at *4 (E.D.N.Y. May 21, 2024) (finding 177 hours reasonable to obtain default judgment in sexual assault case involving "complex, sensitive issues"); *6D Glob. Techs., Inc. v. Lu*, 2016 WL 1756920, at *3 (S.D.N.Y. May 3, 2016) (finding 51.5 hours reasonable to obtain default judgment in breach of contract action); *Collado v. Donnycarney Restaurant LLC*, 2015 WL 4737917, at *14 (S.D.N.Y. August 10, 2015) (finding

78.71 hours reasonable to obtain default judgment in wage and hour case); *see also Shim v. Millennium Grp.*, 2010 WL 2772493, at \*6 (E.D.N.Y. June 21, 2010) (finding 580 hours unreasonable to obtain default judgment in wage and hour case but awarding fees for approximately one-third of the requested amount), *adopted,* 2010 WL 2772342 (E.D.N.Y. July 12, 2010). Accordingly, I do not recommend reducing the hours billed by ABV.

### 2. BG Law

Together, the BG Law timekeepers spent 341.9 hours, from January 2020 through October 2023, working on the firm's various engagements for Hilldun. *See* Bregman Decl. Ex. 1 at ECF p. 64. 22.4 of those hours were billed to this lawsuit (BG Law's matter 3944.009.03). *See id*. at ECF p. 17. As to these hours, this Court is fairly able, from the records before it, to conclude that the time spent was reasonable in proportion to the work done and the results obtained. However, plaintiff also seeks fees for more than 300 hours that BG Law personnel spent over three years on litigation in other courts, as well as non-litigation services that Bregman describes as related to collecting collateral proceeds. *See id*. ¶ 5(a)-(c). As to those hours, this Court has little evidence from which it could determine whether the time was spent productively.

Although BG Law submitted its timesheets, many of the entries are opaque, and Bregman's description of the engagements themselves – and the need for Hilldun's counsel to participate – is frustratingly superficial.[6] Moreover, there is no explanation for the somewhat astonishing number

---

[6] For example, Bregman describes BG Law's matters 3944.009 (for which it seeks reimbursement for a total of 235.7 hours of attorney and paralegal work) and 3944.009.01 (for which it seeks reimbursement for another 67.7 hours) as follows: "Services making demand for payment and drafting documents relating to same, which collateral secured NPL's obligations to Hilldun . . . including also services provided in the chapter 11 bankruptcy of the one of the title owners of collateral securing the Defendants' obligations, through which that collateral was sold and in connection with which Hilldun was also sued by other creditors who challenged Hilldun's security interest in the collateral[.]" Bregman Decl. ¶ 5(a).

of lawyers (10, in a 16-lawyer firm) whose time was billed to one or more of the Hilldun engagements. *See United Realty Advisors, LP v. Verschleiser*, 2023 WL 4141545, at *12 (S.D.N.Y. June 23, 2023) ("Courts routinely reduce fee awards for this sort of overstaffing, given the excess that invariably results from the needless involvement of too many attorneys[.]"). I note as well that portions of the billing records provided by BG Law – including time entries from early 2020, before the Rider and the HCBH Guaranty were signed – are heavily redacted. *See, e.g.*, Bregman Decl. Ex. 1, at ECF pp. 30-39. It is impossible to determine, from the information left unredacted, whether all of the services provided at that point qualify for fee-shifting under the relevant provisions of the NPL Agreement. *See* NPL Ag. § 10 (plaintiff is entitled to recoup its fees incurred in "perfecting, protecting, enforcing or administering Hilldun's . . . rights hereunder or in any collateral in which Hilldun . . . ha[s] a security interest or in the defense of prosecution of any action or proceeding concerning any matter growing out of or in connection with this Agreement and/or any security interest herein granted hereunder").

In considering the reasonableness of the hours for which a litigant seeks a fee award, courts "need not and indeed should not, become green-eyeshade accountants." *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d. Cir. 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Thus, when "dealing with items that are 'excessive, redundant, or otherwise unnecessary, . . . the [district] court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id.* at 54-55 (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d. Cir. 1998)). It may do the same where, as here, the fee applicant has not provided enough information for the Court to determine whether and to what extent the fees requested were reasonably expended on compensable legal tasks. *See Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, 2008 WL 2485407, at *9 (S.D.N.Y. June 18, 2008) ("A court may reduce

15

the number of hours billed . . . if the billing records submitted to the court do not describe, with sufficient clarity, the nature of the work performed such that the court can assess the reasonableness of that work in the context of the overall litigation and, concomitantly, determine whether the amount billed for the work was reasonable"); *Charlestown Cap. Advisors*, 2021 WL 1549916, at *6 (applying a 50% discount to the "approximate" hours claimed by certain attorneys). "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838.

In this case, due to the skimpiness of the information provided by BG Law as to its work on matters other than the instant litigation, the number of attorneys deployed to those matters, and the gaps in its timesheets, a percentage deduction is in order. I therefore recommend that this Court deduct 35% of the BG Law hours coded to matters other than the instant litigation. Combined with my recommended deductions to the hourly rates sought for certain BG Law partners, the following calculations are required:

Managing partner Gubner billed a total of 44.1 hours – all to Hilldun engagements other than this action. I recommend reducing those hours by 35%, to 28.7,[7] and reducing Gubner's hourly rate to $700. Thus, plaintiff should be awarded $20,090 for Gubner's work.

Partner Bregman billed 1.3 hours coded to this action – as to which I recommend no reduction – and 157.2 hours coded to other Hilldun matters, which I recommend reducing to 102.2. I also recommend reducing Bregman's hourly rate to $700 for his work outside of this action. Thus, plaintiff should be awarded fees for 1.3 hours of work by Bregman at $725 per hour, amounting to $942.50, and another 102.2 hours at $700 per hour, totaling $71,540.

---

[7] I have rounded all reduced hours to the nearest one-tenth of an hour.

16

Associate Coy billed 20.7 hours coded to this action – as to which I recommend no reduction – and 66.5 hours coded to other matters, which I recommend reducing to 43.2 hours. However, I do not recommend any reduction to Coy's hourly rate. Thus, plaintiff should be awarded fees for 63.9 hours of work by Coy (20.7 + 43.2) at $435 per hour, amounting to $27,796.50.

Paralegal Treshinsky billed 0.4 hours coded to this action – as to which I do not recommend any reduction – and 1.2 hours coded to other Hilldun matters, which I recommend reducing to 0.8 hours. Thus, plaintiff should be awarded fees for 1.2 hours of Treshinsky's work, at $325 per hour, amounting to $390.

The remaining BG Law timekeepers billed their time exclusively to Hilldun matters other than this action. As to each of them, I recommend that their compensable hours be reduced by 35%, but I do not recommend any reduction to their stated hourly rates – except for partner Brutzkus, whose rate should be reduced to $700 per hour.

C.     **Reasonable Fee Award**

Based on the above analysis, I recommend that plaintiff be awarded $32,365.50 in attorneys' fees for the services provided by ABV, as follows:

| *ABV Timekeeper* | *Position* | *Requested rate* | *Adjusted rate* | *Hours* | *Lodestar* |
|---|---|---|---|---|---|
| Malchman | Partner | 630 | 630 | 48.1 | $ 30,303.00 |
| Multiple | Paralegal | 175 | 125 | 16.5 | 2,062.50 |
| **Total** | | | | | **$ 32,365.50** |

I further recommend that plaintiff be awarded $144,338.00 for the services provided by BG Law, as follows:

| BG Law Timekeeper | Position | Rate | Requested Hours | Adjusted Hours | Lodestar |
|---|---|---|---|---|---|
| Gubner | Eq. Partner | $ 895 | 44.1 | 28.7 | $ 25,686.50 |
| Bregman (SDNY) | Partner | 725 | 1.3 | 1.3 | 942.50 |
| Bregman (other Hilldun matters) | Partner | 700 | 157.2 | 102.2 | 71,540.00 |
| Brutzkus | Partner | 700 | 1 | 0.6 | 420.00 |
| Rozansky | Partner | 675 | 3.2 | 2.1 | 1,417.50 |
| Bagdanov | Partner | 625 | 1 | 0.6 | 375.00 |
| Weisberg | Partner | 575 | 15.3 | 9.9 | 5,692.50 |
| Cohn | Of Counsel | 550 | 24 | 15.6 | 8,580.00 |
| Abrams | Of Counsel | 550 | 2.2 | 1.4 | 770.00 |
| Coy | Associate | 435 | 87.2 | 63.9 | 27,796.50 |
| Wellington | Associate | 395 | 0.8 | 0.5 | 197.50 |
| Treshinsky | Paralegal | 325 | 1.6 | 1.2 | 390.00 |
| Derac | Paralegal | 280 | 2.8 | 1.8 | 504.00 |
| Robbins | Paralegal | 260 | 0.2 | 0.1 | 26.00 |
| **Total** | | | | | $ 144,338.00 |

### D.  Expenses

To recover costs and other expenses, a prevailing party must properly substantiate those expenses with receipts, invoices, or – at a minimum – a sworn statement by an attorney. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) ("The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs."); *Rosales v. Gerasimos Enterprises Inc.*, 2018 WL 286105, at *2 (S.D.N.Y. Jan. 3, 2018) (awarding costs based on a sworn statement by attorney under penalty of perjury).

Plaintiff Hilldun seeks $1,465.82 in expenses incurred by ABV for photocopying, postage, legal research services, transcript preparation, and court filing fees. *See* Malchman Decl. Ex. 1 at 8, 13, 30. However ABV does not provide any receipts or invoices for these expenses. Plaintiff seeks another $4,340.82 in expenses incurred by BG Law, billed as mailing fees, PACER fees, "ASAP Legal, LLC," consulting, filing fees, research fees, photocopies, postage, and prints. *See* Bregman Decl. Ex. 1 at 65-67. However, BG Law also failed to provide any receipts, invoices, or

18

other documentation to substantiate these items. Consequently, plaintiff's award should not include any of these expenses. *See Fisher*, 948 F.3d at 601 (awarding expenses only to the extent they were both necessary and documented). The Court may, however, take judicial notice of the $402 filing fee, which appears on the docket of this action. *See Jerstad v. New York Vinters LLC*, 2019 WL 6769431, at *6 (S.D.N.Y. April 27, 2020).

## IV.  CONCLUSION

For the foregoing reasons, I recommend, respectfully, that plaintiff be awarded $176,703.50 in attorneys' fee ($32,365.50 for services provided by ABV and $144,338.00 for services provided by BG) and $402 in costs, for a total of $177,105.50.

Hilldun is directed to promptly serve a copy of this Report and Recommendation on NPL, Niami, and HCBH by mail, at their last known mailing addresses, and file such proof of service on the docket.

Dated: New York, New York
       October 30, 2024

                                                                                              _____
                                                                                              **BARBARA MOSES**
                                                                                              **United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Arun Subramanian at 500 Pearl Street, New York, NY 10007. Any request for an extension of time to file objections must be directed to Judge Subramanian. **Failure to file timely objections will result in a waiver of such obligations and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d. Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d. Cir. 2010).